## Richmond

Robert E. Beam v. Roger de la Burde and Bridgette de la Burde.

December 1, 1975.

Record No. 741024.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Aubrey R. Bowles, Jr.* (*Aubrey R. Bowles, III*, on brief), for plaintiff in error.

*Charles F. Witthoefft* (*Hirschler, Fleischer, Weinberg, Cox & Allen*, on brief), for defendants in error.

Harrison, J., delivered the opinion of the court.

Roger de la Burde and Brigette de la Burde (Burde) recovered a judgment below for $10,000 against Robert E. Beam (Beam) for breach of contract. Burde alleged that Beam had failed to procure for him the type of insurance coverage on an art collection that he had requested, and which they had agreed would be furnished. On this appeal by Beam, we need only consider whether Burde carried his burden of proof.

Robert E. Beam is an insurance agent. Burde owned an African art collection located at his farm in Powhatan County, Virginia. In October of 1969 he consulted Beam for the purpose of procuring fire

insurance on the collection. After some negotiations Lloyds of London indicated it would cover the Burde collection at a tentative rate of 1.2% of its appraised value. Burde had stated that he would like "a total value insurance policy". Beam testified that Burde decided a rate of 1.2% of the appraised value was too high and inquired about a policy of coinsurance with a deductible clause. Beam thereafter submitted additional rates to Burde.

Burde and Beam differ in their testimony as to the rates submitted and the coverage which Burde instructed Beam to obtain. Burde testified that when he advised Beam of the coverage he desired, "Beam indicated that he would refer this to the insurance company. He gave me a binder over the telephone." Burde says that this oral binder was for a policy that carried a rate of 90 cents for 80% coinsurance *without* a deductible clause. Beam, on the other hand, testified that Burde ordered 80% coinsurance *with* a $5,000 deductible clause and that the rate was 90 cents.

Thereafter Burde received from Beam a "binding certificate" of Atlas Underwriters, Ltd., dated February 6, 1970, which certified that Atlas had effected with Underwriters at Lloyds, London, an all risk fine arts floater on the Burde collection. The limits of liability were stated therein to be "$147,480.00 80% of total of $184,350.00 on fine arts. The remainder 20% uninsured at assured's own risk". The certificate indicated that a permanent policy would be forwarded. The certificate made no reference to the rate or to a deductible clause, and Burde argues that this confirms his understanding that he was purchasing 80% coinsurance with no deductible.

Beam testified that he received the binding certificate from Atlas and forwarded it to Burde without reading it. Della Garrison, the commercial underwriter manager of Atlas, testified that the issuance of the binding certificate without a deductible clause was the result of a typographical error in the underwriter's office.

The actual certificate of insurance, or policy, was issued by Atlas on March 16, 1970, to Roger de la Burde as the named insured. This certificate was an all risk fine arts floater in the amount of $147,480 (80% of the appraised value of $184,350), the 20% remainder uninsured and at insured's own risk, plus $5,000 deductible for each and every loss. The premium paid by Burde was based on a rate of 90 cents per hundred on $147,480, plus tax and stamping fee of $41.63, for a total of $1,368.63.

When Beam received the certificate of insurance he noticed that it had been issued to Dr. Burde alone, and that attached to it was the wrong form of deductible endorsement. On March 19, 1970, Beam advised Atlas that both Dr. Burde and his wife, Brigette, should be named as insureds, and requested that it "please check on that ded. end. [deductible endorsement] It does not fit this policy". On April 6, 1970, Beam again wrote Atlas, requesting a response to his March 19th letter.

Without having received a reply from Atlas, Beam concluded to forward to Burde the uncorrected certificate or policy of insurance with a statement of the corrections and additions that would be made to it. He did this by a letter dated April 21, 1970 to Dr. Burde, in which he stated that "Endorsements will be forth coming from Atlas Underwriters adding your wife as a named insured to the enclosed fine arts policy and *changing the wording on the deductible endorsement* as it is a standard form but certainly does not fit this particular policy." [Emphasis added]

Burde responded by letter to Beam, dated April 6, 1970 (allegedly misdated), in which he wrote that he had reviewed the forwarded policy on fine arts. He stated that he had observed that "The policy contains a $5,000.00 deductible clause" and that "On rechecking the policy binder once more, I found no indication that my payment was for a policy with that clause." Beam testified that he then telephoned Burde and reminded the latter that the deductible clause had been attached to the policy at Burde's specific request; and that when he reminded Burde that the deductible was "his idea", not Beam's, Burde replied, " 'Oh, that's right', or something to that effect: There were just several words, and that was the end of it, and it was never mentioned again."

A few days after this exchange, Beam received from Atlas the proper deductible endorsement which he mailed to Burde in a letter stating, "Enclosed is the revised endorsement changing the wording to fit your policy. Please give me a call if there are any questions or if I can be of further service." The endorsement which Beam enclosed in this letter to Burde is dated April 30, 1970, and is designated "Rider to Amend Coverage". It provided that the $5,000 deductible clause set forth in the rider superseded the $5,000 deductible clause that was attached to the policy. It also changed the name of the insured to include both Dr. and Mrs. de la Burde. The rider indicated that it was to be considered a part of the original policy issued to Dr. Burde and

should be attached thereto; and that its effective date was January 19, 1970, the inception date of the company's coverage.

Burde testified on direct examination that he did not receive this endorsement. When reminded on cross-examination that his attorney had supplied Photostat copies of the endorsement pursuant to a request for presentation of documents, he said, "I have no recollection of receiving it."

There were no further developments until July 31, 1970, when a fire occurred in a cottage on Burde's property, destroying a portion of the art collection. Burde experienced some difficulty in adjusting his claim with Lloyds of London and ultimately brought suit on the policy in the United States District Court. Lloyds defended on numerous grounds unnecessary to relate here. Burde ultimately accepted $86,000 in settlement of his claim. Thereafter he brought the instant action against Beam, claiming that the settlement effected with Lloyds was $13,494.80 less than his alleged loss, and that $10,000 of the loss was attributable to the deductible clause alleged to have been improperly incorporated into the policy.

In analyzing the evidence in this case, we do so with full appreciation of the numerous decisions by this Court holding that where the evidence is in conflict, the judgment of a trial court thereon has the same weight as the verdict of a jury, and that we are not at liberty to disturb such judgment unless it is plainly wrong or without evidence to support it.

The factual dispute in this case is a simple one. Burde says that Beam agreed to provide a policy without a deductible clause. Beam contends that the policy agreed upon was to have such a clause. To prove his allegation Burde relies primarily upon his own testimony, and upon the binding certificate which he described as "the most compelling document in the entire case". The testimony of Beam is in direct conflict with that of Burde. Therefore, in determining whether or not Burde has carried his burden of proof, we look at the circumstances surrounding this transaction and at the exhibits.

The evidence shows conclusively that at the time Burde decided upon the type and extent of coverage he desired on his art collection, he had under consideration several alternatives. He originally contemplated full coverage but demurred upon discovering its cost. It was only after several days of reflection, consideration of the alternatives, and evaluation of the premium cost, that he decided upon his coverage.

The uncontradicted testimony of Della Garrison, of Atlas Underwriters, is that the issuance by Atlas of the binding certificate, without the $5,000 deductible clause, was done in error. It is not controverted that the premium charged Burde and paid by him, $1,368.63, was the correct premium due on a policy which provided 80% coverage with a deductible clause of $5,000. When the policy or certificate of insurance was issued, it contained a $5,000 deductible clause, although an improper one. It provided that for every claim on the policy the insured would contribute $5,000 within ten days from date of request by the underwriters or its representatives. The proper and standard deductible clause which should have accompanied the policy (and which Beam said was subsequently mailed to the insured), provided that from the amount of any claim as finally adjusted the sum of $5,000 would be deducted.

It should be noted that after receiving and reviewing the policy, Burde did not deny that he ordered a policy with a $5,000 deductible clause. He simply wrote Beam: "On rechecking the policy binder once more, I found no indication that my payment was for a policy with that clause." He did not threaten to cancel his policy, nor did he then claim that he was supposed to have gotten a policy without a deductible clause. And he made no reference to Beam's statement that an endorsement was forthcoming, changing the wording of the deductible clause.

The next development was the company's issuance of a rider, the effect of which was to incorporate into the policy the proper deductible clause and to include Mrs. Burde's name as one of the insureds. Beam testified that he mailed this endorsement to Burde. It is a reasonable inference that the endorsement was received since it subsequently surfaced in the hands of Burde's attorney.

These are compelling circumstances which lead us to decide that the agreement between the parties contemplated a policy providing for 80% coinsurance with a $5,000 deductible provision. It would have been to Beam's advantage for Burde to have purchased a more expensive policy rather than to have settled upon coverage that called for the smallest premium.

The premium paid by Burde covered a policy with a deductible clause. Appellee therefore received the policy he paid for, and the policy for which appellant says he contracted. It is true that the binding agreement omits any reference to the deductible clause. However, the evidence is that the omission was an error. The policy which sup-

planted the binding agreement was delivered to Burde with a deductible endorsement. The exchange of letters between Burde and Beam concerned a deductible endorsement. An accurate deductible endorsement was issued and mailed to Burde some three months prior to the loss sustained by him.

We think it reasonable to conclude that had Beam contracted to provide Burde with a policy without a deductible clause, Burde's letter, written after reviewing the policy and finding a deductible clause therein, would have been couched in stronger language and would have been more positive in tone. He would have protested and not merely have contented himself with "rechecking the policy binder", and observing that it did not "indicate" that his "payment" was for a policy with that clause. Further, the binder does not show the rate, the amount of premium or what payment was made by Burde.

We conclude from viewing the evidence in this case in the light most favorable to Burde, as we must, that it is insufficient to support the judgment which the appellees have recovered. Burde failed to carry the burden of proof necessary to establish the contract he alleged and its breach. It is therefore unnecessary that we address ourselves to the other questions presented by appellant. The judgment of the lower court is reversed, and final judgment will be entered here for appellant.

*Reversed and final judgment.*

COMPTON, J., dissenting.

I dissent. The majority has substituted its judgment, on this factual question, for that of the trier of the facts; it has disregarded the binding effect, on appeal, of the findings of the trial judge, which in my view are supported by credible evidence. *Fred C. Walker Agency, Inc.* v. *Lucas*, 215 Va. 535, 211 S.E.2d 88 (1975). I would affirm.